UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH WILLIS,<br><br>    Plaintiff,<br><br>    v.<br><br>ENTERPRISE DRILLING FLUIDS, INC., et al.,<br><br>    Defendants. | Case No.: 1:15-cv-00688 - JLT<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING THE MOTION TO STRIKE<br><br>ORDER DISMISSING THE COMPLAINT WITH LEAVE TO AMEND |

    Plaintiff Kenneth Willis asserts Defendants Enterprise Drilling Fluids, Inc., and DrilTek, Inc., are liable for wage and hour violations of California law and the Fair Labor Standards Act, and intends to represent a class of others similarly situated. (Doc. 16) Enterprise Drilling Fluids requests that the Court dismiss Plaintiff's class claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and strike the class allegations in the First Amended Complaint pursuant to Rule 12(f). (Doc. 23)

    For the following reasons, Defendant's motion to dismiss is **GRANTED** and the motion to strike is **DENIED**.

**I.    Background and Factual Allegations**

    Plaintiff initiated this action by filing a complaint on May 5, 2015 (Doc. 1), which he amended on June 30, 2015 (Doc. 16). Plaintiff alleges he was employed as a mud engineer by Enterprise Drilling Fluids, Inc. ("Enterprise") and DrilTek, Inc., which required taking samples from a drilling fluid tank, also known as the "mud tank," and prepare reports. (Doc. 16 at 6, ¶15) He reports that a

specific degree was not required to perform the work, but employees spent "approximately 3 months[] training in 'mud school.'" (*Id.*)

He asserts that Enterprise and DrilTek "acted as co-employers and/or joint employers" because Enterprise "initially hired Willis and other Class Members," but "DrilTek had the power to request specific, mud engineers and could discipline, terminate, and/or transfer them from their positions working at the drill site." (Doc. 16 at 2-3, ¶ 6(a))  Plaintiff alleges, "Together Enterprise Drilling Fluids, Inc. and DrilTek determined Willis' and other Class members' daily rate of pay," and set their hours and work schedules. (*Id.* at 3, ¶¶ 6(c)-(d)) According to Plaintiff, "Although Enterprise Drilling Fluids, Inc. gave Willis and other Class members directions about when and where to report to a particular drilling location, DrilTek instructed Willis and other Class members when and/or where to work once they arrived at the drilling location." (*Id.*, ¶ 6(e)) Further, Plaintiff asserts that DrilTek employees directed workers "what to do or what not to do as to virtually every aspect of their jobs," including where to park work trailers, when to order water, "which and how much materials" should be used by the mud engineers, and when they "would eat and where they would eat and whether they would eat together."  (*Id.* at 4, ¶¶6(j)-(t))

Plaintiff alleges that "mud engineers were required to work 24-hour shifts, often for periods of two weeks or more without a day's rest" at Defendants' worksites. (Doc. 16 at 6, ¶ 14)  He reports the workers "were told to sleep when they could in the work trailer at the drilling site," but the engineers "were required to respond to calls at any time, even if sleeping." (*Id.*)  Plaintiff alleges the "[m]ud engineers are not told that they can take rest periods, are not informed about any rest period policy, and routinely are required to work through four hour periods with no actual rest period during which they are relieved of all duty for at least 10 minutes." (*Id.*, ¶ 17)  He asserts the mud engineers "worked for hours for which they were not compensated at least the minimum wage," including overtime, and "Defendants regularly and systematically, as a policy and practice, failed to pay Plaintiff and class members the wages due them." (*Id.*, ¶¶ 19-20)  Accordingly, Plaintiff asserts Defendants have violated the Fair Labor Standards Act, and seeks to represent a class defined as:

> All mud engineers who worked for Enterprise Drilling Fluids, Inc., Berry Petroleum Company, LLC, and/or Linn Operating, Inc. in the United States within the three years preceding the filing of this action to the date of trial who worked hours for which they were not compensated at the minimum wage or worked more than 40 hours during a

>week and were not fully compensated for this time worked over 40 hours per week at the properly calculated overtime rate.

(*Id.* at 6-7, ¶¶ 21-22)

Based upon the foregoing facts, Plaintiff also contends Defendants are liable for unlawful business practices in violation of California law, California's wage and hour laws, including: failure to pay wages in violation of Cal. Labor Code §§ 201, 202, and 203; failure to pay compensation for meal and rest periods in violation of Cal. Labor Code § 226.7; failure to provide accurate and complete wage statements in violation of Cal. Labor Code §§ 226 and 1174; failure to reimburse for business expenses in violation of Cal. Labor Code § 2802; and violations of Cal. Bus. & Prof. Code § 17200. (*See generally* Doc. 16 at 8-21)  In pursuing these causes of action, Plaintiff seeks to represent a "California Class," including:

>All current and/or former employees that worked for Defendants as "mud engineers" or "mud engineer trainees" in California within the four years preceding the filing of this action, or shorter statute of limitations as determined by the Court, through the date of trial.

(*Id.* at 8)  In addition, Plaintiff identifies a "sub-class," which would include only "Class Members that ended their employment with the Defendants during the Class Period, but who were not timely paid the accrued and unpaid wages owed to them as required by Labor Code Sections 201 or 202." (*Id.*)

DrilTek filed an Answer to the First Amended Complaint on September 2, 2015.  (Doc. 22)  Enterprise filed the motion to dismiss now pending before the Court on September 3, 2015 (Doc. 23).  Plaintiff filed his opposition on October 14, 2015 (Doc. 29), to which Enterprise filed a reply on October 21, 2015 (Doc. 30).  The Court heard the oral arguments of the parties at a hearing held on October 29, 2015.

**II.     Motions to Dismiss**

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations, quotation marks omitted). When factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief. However, a plaintiff' legal conclusions are not entitled to the same assumption of truth. *Id.*

A court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to officer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Therefore, the Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). The Court may grant leave to amend a complaint when its deficiencies can be cured by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000).

**III.    Motions to Strike**

Pursuant to Rule 12(f), a district court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A "redundant" matter is comprised "of allegations that constitute a needless repetition of other averments or which are foreign to the issue to be denied." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005). An immaterial matter "has no essential or important relationship to the claim for relief or the defenses being pleaded," while an "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other*

*grounds* (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07, 711 (1990)).

The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Generally, motions to strike affirmative defenses "are disfavored and infrequently granted." *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005).

## IV. Discussion and Analysis

Enterprise argues that Plaintiff fails to allege that he is "similarly situated" to the individuals who would be in the FLSA Collective Class. (Doc. 23-1 at 10) In addition, Enterprise argues that Plaintiff fails to allege facts sufficient to support the conclusion that the California Class and the proposed subclass satisfy the requirements of Rule 23. (*Id.* at 11-15)

### A. The FLSA Collective Class

In the First Amended Complaint, Plaintiff defines the FLSA Collective Class to include "mud engineers who worked for Enterprise Drilling Fluids, Inc., Berry Petroleum Company, LLC, and/or Linn Operating, Inc." (Doc. 16 at 7) Enterprise argues the definition is improper, because "Plaintiff is attempting to join three different and separate classes into one: 1) all mud engineers who worked for EDF, 2) all mud engineers who worked for Berry Petroleum Company, LLC, and 3) all mud engineers who worked for Linn Operating, Inc." (Doc. 23-1 at 10) Significantly, however, Berry Petroleum Company, LLC and Linn Operating, Inc., were dismissed as defendants from this action. (*See* Doc. 15) Plaintiff acknowledges the error, and seeks leave to amend his complaint to clarify the definition and his claim. (Doc. 29 at 4)

Accordingly, the motion to dismiss Plaintiff's first claim for relief, for a violation of the Fair Labor Standards Act, is **GRANTED** with leave to amend

### B. The California Class and its Subclass

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a). Certification of a class is proper if:

5

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These elements are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 156 (1982). A party seeking to represent a class bears the burden of alleging the elements of Rule 23(a) are satisfied. In addition, the representative party must allege facts sufficient to support a determination that the proposed classes are maintainable under one of the three alternatives set forth in Rule 23(b). *See* Fed. R. Civ. P. 23(b); *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

Here, Plaintiff alleges the requirements of Rule 23(a) are satisfied for the California Class and the proposed subclass. (*See* Doc. 16 at 6-10) However, Enterprise argues there are not sufficient facts to support the conclusion that the classes satisfy the numerosity, adequacy of representation, and Rule 23(b)(3) requirements. (Doc. 23-1 at 11-15)

1. Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980). Although there is not a specific numerical threshold, joining more than one hundred plaintiffs is impracticable. *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002). However, the Ninth Circuit has determined a court "did not abuse it discretion in determining that [a] class of 20 satisfies the numerosity requirement" given the interest of judicial economy and the financial burden on class members to filing separate lawsuits. *Rannis v. Recchia*, 380 Fed. App'x 646, 650 (9th Circ. 2010).

Here, Plaintiff alleges the numerosity requirement is satisfied because "[t]he members of the Class are believed to be in excess of 200." (Doc. 16 at 8, ¶ 35) However, as Defendant argues, "Plaintiff fails to provide any factual allegations to support [his] belief." (Doc. 23-1 at 14) For example, Plaintiff fails to state the number of mud engineers with whom he worked, or the number of mud engineers that he trained with for Enterprise and DrilTek. Although Plaintiff is not required to

identify the precise number of class members, he must provide facts to support his conclusion that the class includes more than 200 individuals.[1]  Moreover, Plaintiff fails to allege any facts to support a determination that the proposed subclass—including only workers who ended their employment with Defendants during the Class Period—is sufficiently numerous to satisfy the requirements of Rule 23(a). *See Betts v. Reliable Collection Agency*, 659 F.2d 1000, 1005 (9th Cir. 1981) (explaining that when a class is divided into subclasses, "each subclass must independently meet Rule 23 certification requirements").

### 2. Adequacy of Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).  Accordingly, representative parties must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In general, "resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, Plaintiff alleges the "adequacy of representation" requirement is satisfied because his "interests coincide with, and are not antagonistic to, the interests of the members of the California Class members Plaintiff seeks to represent." (Doc. 16 at 10, ¶ 38)  In addition, Plaintiff asserts he "retained counsel competent and experienced in class action litigation, and Plaintiff intends to prosecute this action vigorously."  (*Id.*)

Enterprise argues that Plaintiff "fails to provide any factual allegations" to support his assertion that the adequacy requirement is satisfied. (Doc. 23-1 at 15)  According to Enterprise, Plaintiff fails to explain how his "claim 'coincide' with the mud engineers employed Driltek, Inc., with the mud engineers that were employed by EDF in the four years preceding the lawsuit but who no longer work for EDF, or with the mud engineers currently employed with EDF."  (*Id.*)  However, Plaintiff alleges in

---

[1] Notably, EDF claims that it employed only 17 mud engineers in the four years preceding the filing of this litigation. If Plaintiff has facts that EDF employed numbers sufficiently great as to justify a class action, he must set forth those facts to support his claim that there is sufficient numerosity.

his complaint that "Enterprise and DrilTek acted as co-employers and/or joint employers" of Plaintiff and the class members, and that Plaintiff and the class members were subject to the same unlawful business practices. (Doc. 16 at 2-3, ¶ 6) Further, Plaintiffs assertion that he has hired counsel to represent the class supports his assertion that he intends to prosecute the action on behalf of the class. Therefore, Plaintiff has alleged facts sufficient to support his assertion that he is an adequate representative.

### 3. Rule 23(b) Factors

A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are generally called the "predominance" and "superiority" requirements. *See Hanlon*, 150 F.3d at 1022-23; *see also Wal-Mart Stores*, 131 S. Ct. at 2559 ("(b)(3) requires the judge to make findings about predominance and superiority before allowing the class").

According to Enterprise, "Judging from the face of the First Amended Complaint and the "California Class" definition, individualized issues will predominate and defeat class certification because Plaintiff attempts to join two different and separate classes into one: 1) all mud engineers who worked for EDF and 2) all mud engineers who worked for Driltek, Inc." (Doc. 23-1 at 12) In addition, Enterprise argues that Plaintiff fails to allege facts sufficient to support a conclusion that the superiority element is required, asserting Plaintiff's statements "are nothing more than the bare and formulaic recital of the elements of Rule FRCP 23(b)(3). (*Id.* at 13)

#### a. Predominance

The predominance inquiry focuses on "the relationship between the common and individual issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods. v Windosr*, 521 U.S. 591, 623 (1997). The Ninth Circuit explained, "[A] central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser v. Accufix Research Inst., Inc.*,

253 F.3d 1180, 1189 (9th Cir. 2001)).

In this case, Plaintiff alleges that "[q]uestions of law and fact common to the California Class members predominate over questions affecting only individual members." (Doc. 16 at 10, ¶ 38) Enterprise argues Plaintiff fails to allege facts to support these claims, asserting:

> There is also no allegation that EDF and Driltek, Inc. have the same employment plan, policies or procedures. There is no allegation that all mud engineers employed by Driltek were contemporaneously employed by EDF. From the face of the First Amended Complaint, the Court can infer that EDF and Driltek, Inc., two different and separate employers, will have many variances in their employment plans, policies and procedures with regards their mud engineers. Further, the Court can infer that the claims will vary from employer to employer, making it impossible for the Court to resolve all of claims of all of the plaintiffs situated in the one class in the same manner. Such individualized inquiries defeat the entire purpose of the class treatment of the case.

(Doc. 23-1 at 12)

Notably, however, Plaintiff alleges that DrilTek and Enterprise "acted as co-employers and/or joint employers of Kenneth Willis and class members." (Doc. 16 at 2, ¶ 6) In support of this assertion, Plaintiff alleges that he and other class members were hired by Enterprise but "DrilTek had the power to request specific, mud engineers and could discipline, terminate, and/or transfer them from their positions working at the drill site." (*Id.* at 3) Plaintiff also alleges, "Together Enterprise Drilling Fluids, Inc. and DrilTek determined Willis' and other Class members' daily rate of pay," set their "hours and/or work schedules," and "each had the power to cause Willis and other Class members to work and/or to prevent Willis and other Class members from working." (*Id.* at 3, ¶6(c)-(f)) Furthermore, Plaintiff alleges Defendants had a policy and practice of failing "to pay Plaintiff and class members the wages due them" and a policy and practice of failing to "properly calculate[ ] overtime [pay] due them." (*Id.* at 6, ¶¶19-20) Accordingly, Plaintiff alleges facts sufficient to support his assertion that common issues predominate over individual inquiries in this action.

### b.    Superiority

The superiority inquiry requires a determination of "whether objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023 (citation omitted). This tests whether "class litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Pursuant to Rule 23(b)(3), the Court must consider four non-exclusive factors to determine whether a class is a superior

method of adjudication, including (1) the class members' interest in individual litigation, (2) other pending litigation, (3) the desirability of concentrating the litigation in one forum, and (4) difficulties with the management of the class action.

In this case, Plaintiff alleges:

> The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

(Doc. 16 at 10, ¶ 39)  Defendant contends these assertions are "bare and formulaic recital[s]" without factual support. (Doc. 23-1 at 13)

However, given Plaintiff relies upon policies and practices common to the entire class, the Court finds the pleading sufficiently—though minimally—supports that a class action is the superior method of adjudicating the claims.  *See Rannis*, 380 Fed. App'x at 650.

### 4. Ascertainability of the Proposed Subclass

"Prior to class certification, plaintiffs must first define an ascertainable and identifiable class." *Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 163 (C.D. Cal. 2002). Here, Enterprise argues the proposed subclass "is unascertainable because it is a 'fail-safe' class in that it is dependent on the legality of EDF's conduct." (Doc. 23-1 at 17)  A fail-safe class is "when the class itself is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010).  According to Enterprise, "Plaintiff, by virtue of his California 'Sub-class' definition, is asking the Court to determine the legal merits of each class member, and determining they were 'timely paid the accrued and unpaid wages owed to them as required by Labor Code Section 201 or 202.'" (*Id.*)

Once again, however, Plaintiff alleges Defendants had "a policy and practice" of failing to pay the wages due.  (*See* Doc. 16 at 6, ¶¶ 19-20)  If Plaintiff succeeds in establishing the existence of unlawful policies or practices common to all the class members, the Court would not be required to

determine the legal merits of each class members' claims, as Enterprise argues. Thus, though, ultimately, Plaintiff may not be able to prove this, the factual allegations are sufficient to support the alleged conclusion that the proposed class definition is ascertainable.

### C. Motion to Strike Class Allegations

Enterprise's request that the Court strike all class allegations in the complaint relies upon the dismissal of the claims presented on behalf of the class. (*See* Doc. 23-1 at 6) While class allegations can be stricken at the pleadings stage if the claim could not possibly proceed on a classwide basis, "it is in fact rare to do so in advance of a motion for class certification." *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F.Supp.2d 1220, 1245 (C.D. Cal. June 30, 2011). Thus, the Court may grant a motion to strike class allegations only "[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged." *Sanders v. Apple, Inc.*, 672 F. Supp.2d 978, 990 (N.D. Cal. 2009).

Here, it is not clear that Plaintiff is unable state sufficient facts to support his class claims. Rather, the deficiencies identified by above may be cured by amendment. Because the class allegations are not "redundant, immaterial, impertinent, or scandalous" matters, Enterprise's motion to strike is **DENIED**. *See* Fed. R. Civ. P. 12(f).

### V. Conclusion and Order

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. Defendant's motion to dismiss pursuant to Rule 12(b)(6) is **GRANTED**;
2. Defendant's motion to strike the class allegations is **DENIED**; and
3. Plaintiff **SHALL** file a Second Amended Complaint within twenty-one days of the date of service of this order

IT IS SO ORDERED.

Dated:    **October 28, 2015**            **/s/ Jennifer L. Thurston**
                                                     UNITED STATES MAGISTRATE JUDGE